IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK DESCHAINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Cause No. 05-CV-388-WDS |
| | ) |
| CENTRAL SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant's motion for summary judgement, and in the alternative, motion for partial summary judgment (Doc. 15), to which plaintiff has filed a response (Doc. 17), and defendant a reply (Doc. 22).

Plaintiff filed a single count complaint against defendant Central Systems, Inc. ("CSI") seeking indemnity from CSI for judgments totaling $145,051.59, entered against Ecological Services, Inc. and plaintiff in his role as personal guarantor under a commercial lease. Plaintiff also seeks costs, interest and attorney fees.

## BACKGROUND

Plaintiff formed Ecological Services, Inc. of Illinois in December of 1997. He was the majority shareholder, owning 37% of the company, and there were four other shareholders. (Doc. 17, Pl. Aff. ¶ 2). Ecological Services, Inc.'s main business function was to transport liquid waste material. (Doc. 17, Pl. Aff. ¶ 3). On December 19, 1997, the company entered into a five-year agreement with Lazarus Realty Corporation (Lazarus Realty") for the lease of 2601 McCausland, East St. Louis, Illinois. Plaintiff personally guaranteed the agreement. (Doc. 16, Ex. 2). Thereafter, the company operated from that premises. In July of 1998, the company's

name was changed to Ecological Services of America, Inc. of Illinois. The company was purchased by Ecological Services of America, an Indiana corporation, in April of 1999 (hereinafter, "the Indiana Company"). (Doc. 17, Pl. Aff. ¶¶ 6 and 9).

When the Indiana Company purchased Ecological Services of America, Inc. of Illinois, the two companies executed a document entitled "Agreement for Sale and Transfer of Assets." (Doc. 16, Ex. 3). Article II of that agreement stated as follows:

> The purchase price to be paid by [the Indiana Company] to [Ecological Services of America, Inc. of Illinois] is the assumption of the corporate liabilities of Ecological Services of America, Inc., an Illinois Corporation, as set forth in Schedule 1.1 and reasonable expenses incurred in connection with the preparation, execution and performance of this agreement.
>
> Additionally, [the Indiana Company] will ensure that Mark Deschaine and Marnie E. Deschaine are indemnified by Central Systems, Inc., an Indiana Corporation[,] against any debt relating to the business of Ecological Services of America, an Illinois Corporation, in which they are personal guarantors at the time of the closing.

Schedule 1.1 listed several personal obligations of plaintiff, but did not list the lease agreement with Lazarus Realty, and the Indiana Company did not assume plaintiff's obligation on the lease. However, in purported accordance with Article II, above, Greg Totten, president of CSI, executed a document entitled "INDEMNIFICATION," which stated the following:

> Central Systems, Inc., an Indiana Corporation, pursuant to adequate and sufficient consideration, agrees and acknowledges that it is indemnifying Mark Deschaine and Marnie E. Deschaine against any debt relating to the business of Ecological Services of America, an Illinois Corporation, in which they are personal guarantors at the time of the closing.

This Indemnification Agreement was purportedly signed at or about the same time that the sale agreement between Ecological Services of America, Inc., an Illinois corporation, and the Indiana Company was executed. (Doc. 16, Ex. 1, Depo. of Greg Totten, Tr. 15–17). Therefore,

the "closing" referred to in the Indemnification Agreement relates to that sale.[1]

Plaintiff was also a controlling shareholder of CSI, defendant in this matter. Several individuals owned shares in each of the three corporations—Ecological Services, Inc. of Illinois, the Indiana Company, and Central Systems, Inc. (Doc. 17, Pl. Aff. ¶¶ 2, 11–12). Ecological Services, Inc. thereafter defaulted on its lease of the McCausland property, and two judgments were entered against it and plaintiff as personal guarantor. The first judgment, issued September 4, 2003, by the Circuit Court of St. Clair County, Illinois, in case number 00-L-0009, *Lazarus Realty Corp. and John Cusumano v. Ecological Systems Inc. and Mark Deschaine*, was in the amount of $111,960.88. The second judgment, a supplemental order by the same court, issued January 20, 2004, was entered in the amount of $19,182.46 in attorney fees and costs, and $13,908.05 in prejudgment interest. Plaintiff satisfied both judgments by paying the required amounts to Lazarus Realty.

Plaintiff argues that the Indemnification Agreement requires CSI to reimburse him for monies spent in satisfaction of the judgments rendered against him. Defendant moves for summary judgment on the basis of two theories: (1) the Indemnification Agreement is unenforceable under applicable law because it does not "clearly and explicitly" define CSI's obligations, and/or (2) the Indemnification Agreement is not supported by adequate consideration. Alternatively, defendant seeks partial summary judgment in regards to plaintiff's request for attorney fees, costs and interest.

---

[1] Defendant does not deny that the Indemnification Agreement relates to that sale.

## STANDARD

A district court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c): *see also Celotex Corp. V. Catrett*, 477 U.S. 317, 322–23 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). The moving party initially bears the burden to demonstrate an absence of genuine issues of material fact, indicating that judgment should be granted as a matter of law. *See Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1999) (citing *Celotex*, 477 U.S. at 323). Once a motion for summary judgment has been made and properly supported, however, the nonmovant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. *See id.* In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, the Court will not resolve factual disputes, weigh conflicting evidence, or make credibility determinations. *See Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001); *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

## ANALYSIS

When neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits. *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991). Accordingly, the Court will apply Illinois substantive law in arriving at its decision.

**1. The Indemnification Agreement sufficiently outlines CSI's obligations.**

Defendant argues it is entitled to summary judgment because the Indemnification Agreement does not "clearly and explicitly" obligate CSI to indemnify plaintiff for the judgments at issue. While defendant cites many cases with the "clearly and explicitly" language in support of its argument, the Court finds defendant's analysis to be incomplete.

Under Illinois law, indemnification agreements are to be construed like any other contract. *See CSX Trans. v. Chicago and Nw. Trans. Co.,* 72 F.3d 185, 189 (7th Cir. 1995). The intention of the parties is the paramount concern. *See Plepel v. Nied*, 435 N.E.2d 1169, 1176 (Ill. App. 1982). Unless a contract is ambiguous, its meaning must be determined from the words used. *Westinghouse Elec. Elevator Co. v. La Salle Monroe Bldg. Corp.*, 70 N.E.2d 604, 606 (Ill. 1947). The court must consider the circumstances under which the contract was made when interpreting its meaning. *Gay v. S.N. Nielsen Co.*, 152 N.E.2d 468, 471–72 (Ill. App. 1958), *citing Chicago & N.W. Ry. Co. v. Chicago Packaged Fuel Co.*, 195 F.2d 467 (7th Cir. 1952).

For many years, the Illinois Supreme Court has followed the rule that "an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract, or such intention is expressed in unequivocal terms." *Westinghouse Electric*, 70 N.E.2d *at* 607; *see also, Chicago Hous. Auth. v. Fed. Sec., Inc.*, 161 F.3d 485, 487 (7th Cir. 1998). Here, plaintiff does not seek indemnification of his own negligence, therefore the "clear and explicit" requirement does not apply, and the Indemnification Agreement at issue will be interpreted using general rules of contract interpretation. The fact that the lease with Lazarus Realty is not specifically mentioned in the Indemnification Agreement is not dispositive.

The Indemnification Agreement in this matter is actually quite specific. It states that CSI will indemnify plaintiff "against any debt relating to the business of Ecological Services of America, an Illinois Corporation, in which [he is] personal guarantor[] at the time of the closing." (Doc. 16, Ex. D). Defendant admits plaintiff was a personal guarantor of the lease between Ecological Services of America, an Illinois Corporation and Lazarus Realty, at the time that company was purchased by the Indiana Company. CSI's obligations in this matter are readily ascertainable from the face of the Agreement. Further, as stated above, the intention of the parties is of paramount concern in interpreting a contract. In the present case, defendant's largest shareholder, Jerry Armstrong, testified in his deposition that he authorized company president Greg Totten to execute the Indemnification Agreement, and that the purpose of said Agreement was to:

> relieve Mark [Deschaine] of any liability, past or present, of the organizations regardless of the ownership at any point in time. Mark [Deschaine] felt, and rightfully so, and the company felt that he shouldn't be personally responsible for any part of that. That's why they indemnified him.

(Doc. 16, Ex. A, Deposition of Jerry Armstrong, Tr. 21–22). Further, plaintiff's affidavit states that CSI's shareholders were aware of both the Indemnification Agreement signed by company president Greg Totten and plaintiff's personal guarantee of the McCausland lease. (Doc. 21). Again, defendant does not contest these facts.

The Court therefore **FINDS** the Indemnification Agreement between the parties covers the lease with Lazarus Realty, and **DENIES** defendant's summary judgment motion on defendant's claim that the Indemnification Agreement does not "clearly and Explicitly" obligate CSI to indemnify plaintiff for the judgments at issue.

### 2. The Indemnification Agreement was supported by adequate consideration.

Defendant next argues it is entitled to summary judgment because the Indemnification Agreement is not supported by adequate consideration. Defendant argues this lack of consideration is evidenced by the following: (1) the omission of any detailed bargained-for exchange in the words of the Indemnification Agreement; (2) the fact that plaintiff did not agree to take on any detriment, offer any benefit, or bargain to do anything for CSI in the sale agreement between the Indiana Company and Ecological Services of America, an Illinois Company; and (3) plaintiff did not sign the Indemnification Agreement.

Adequacy of consideration is not a steep burden. The basic notions of freedom of contract prevent the Court from participating in the evaluation of adequacy of consideration. "[T]he informed decision by a party exchanging a promise for a promise that what it is receiving is worth what it is giving may not later be second-guessed by that party, nor may the party ask a court to engage in such *post hoc* revisionism." *GLS Dev., Inc. v. Wal-Mart Stores, Inc.*, 944 F. Supp. 1384, 1394 (Ill. N.D. 1996). Nominal consideration is all that is required. *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 202 (7th Cir. 1988). As law professors are fond of saying, even a "peppercorn" is sufficient. CSI, a sophisticated party, signed a contract that stated it was acting "pursuant to adequate and sufficient consideration." (Doc. 16, Ex. D). The Court will not second guess the reasoned determination of a sophisticated party. It is not a requirement of a valid contract that the consideration be spelled out in detail. Further, plaintiff states in his affidavit that, "In exchange for CSI agreeing to indemnify me, I agreed to perform and did perform various investment banking and consulting services for CSI." (Doc. 17, ¶ 16). Defendant does not deny that plaintiff performed these services, but merely asserts that these services were

not provided for in exchange for CSI's promise to indemnify plaintiff. It is CSI's burden to support its motion for summary judgment, and it has failed to direct the Court to relevant portions of the record in support of its argument.

Defendant's second argument holds no weight with the Court as only the Indiana Company and Ecological Services of America, an Illinois Company, were party to the Sale Agreement. Accordingly, they could not obligate a third party (plaintiff or defendant) in any way. It is only logical that the sale agreement included no obligations to be performed by plaintiff, as he was not a party to that contract.

Likewise, defendant's third argument is quickly dismissed as a contract need only be signed by the party against whom enforcement is sought. *See Peoria Harbor Marina v. McGlasson*, 434 N.E.2d 786, 791 (Ill. App. 1982). Here, plaintiff seeks to enforce the contract against defendant. Greg Totten, CSI president, signed the Indemnification Agreement. Therefore the signature requirement has been satisfied. It is irrelevant that plaintiff did not sign the Agreement.

For the above stated reasons, the Court **DENIES** defendant's motion for summary judgment on defendant's claim that the contract lacked consideration.

**3. Plaintiff's right to attorney fees, costs and interest.**

Finally, defendant CSI argues that it is entitled to partial summary judgment as to plaintiff's request for attorney fees, costs and interest because the Indemnification Agreement "does not mention the payment of any attorney's fees or costs, whether in defending an underlying suit brought by someone on account of the debt (*e.g.* the suit brought by Lazarus Realty) or in prosecuiting an action to obtain indemnity for the underlying suit (*e.g.* this

suit)."(Doc. 16). The Court agrees, in part.

Under the American Rule, each party in a lawsuit bears its own fees and costs. *See Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). Two general exceptions are recognized. The responsibility for payment of attorneys' fees may be shifted from one party to another pursuant to contractual agreement or express statutory authorization. *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 1998 WL 704098, at *3–4 (N.D. Ill. 1998); *see also, Hamer v. Kirk*, 356 N.E.2d 524, 526 (Ill. 1976). The Court is aware of no applicable statute that would allow an award of attorney fees in this matter; accordingly, fees and costs will only be awarded if allowed by the contract.

An indemnity agreement must be construed as any other contract. *Plepel v. Nied*, 435 N.E.2d 1169, 1176 (Ill. App. Ct. 1982). The very essence of an indemnity agreement is to hold the indemnitee harmless and completely relieved of liability according to the terms of the agreement. *Mitchell v. Peterson*, 422 N.E.2d 1026, 1033 (Ill. App. Ct. 1981). In determining if fees and costs should be awarded, there is a distinction between holding an indemnitor responsible for fees incured by the indemnitee in litigation with third parties and holding an indemnitor responsible for fees incurred in establishing its right to indemnification. The usual rule is that fees are denied in the latter case unless expressly provided for in the contract. *CMC Heartland Partners v. Gen. Motors Corp.*, 1994 WL 498357, at *12 (N.D. Ill. 1994). As explained by Judge Friendly:

> Indemnity obligations . . . require the indemnitor to hold the indemnitee harmless from costs in connection with a particular class of claims. Legal fees and expenses incurred in defending an indemnified claim are one such cost and thus fall squarely within the obligation to indemnify.

*Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306, 316 (2d Cir. 1985). Consequently, attorney's fees incurred in defending against liability claims are included as part of an indemnity obligation implied by law and reimbursement of such fees is presumed to have been the intent of the draftsman unless the agreement explicitly says otherwise. *CMC Heartland Partners*, 1994 WL *at* *12. Such reasoning does not, however, apply to fees and costs incurred in establishing the obligation to indemnify. Rather, those fees and costs are incurred in suing for a breach of contract and the ordinary rule requiring a party to bear his own expenses of litigation is applicable. *Id.*

Here, plaintiff seeks indemnification of two judgments filed against him in state court. The underlying claims in those judgments are arguably covered by the Indemnification Agreement at issue. Plaintiff may seek reimbursement for his fees and costs in defending the underlying litigation, as well as reimbursement for the judgment of fees and costs awarded against him in favor of Lazarus Realty. Plaintiff's affidavit states that all of his attorney fees in the underlying state court cases were paid by either the Indiana Company or CSI, Inc. (Doc. 17, ¶ 19). Therefore, payment of those fees is a moot issue. However, plaintiff may still seek reimbursement of the monies he paid in satisfaction of the judgment of fees and costs awarded against him in favor of Lazarus Realty.  Plaintiff may not recover fees and costs incurred in litigating the matter presently before the Court—which is essentially a breach of contract action for failure to indemnify. Accordingly, defendant's motion for partial summary judgment regarding plaintiff's request for attorney fees, costs and interest is hereby **DENIED** as to fees and costs awarded against plaintiff and in favor of Lazarus Realty in the underlying litigation, **GRANTED** as to fees and costs incurred by plaintiff in the underlying litigation, and

**GRANTED** as to fees and costs incurred by plaintiff in the instant matter.

## CONCLUSION

For the reasons set forth above, the Court hereby **DENIES** defendant's motion for summary judgment on defendant's claims that the Indemnification Agreement was not "clear and explicit" and that the contract lacked consideration, and **GRANTS** in part and **DENIES** in part defendant's motion for partial summary judgment, in that plaintiff may not seek attorneys' fees, interests and costs incurred by him in the instant matter, or in defense of the underlying litigation (as those costs were not paid by plaintiff in the first place), but he may seek indemnification from defendant of the award of attorneys' fees, interest and costs entered against him in the underlying matter.

**IT IS SO ORDERED.**

**DATED: June 13, 2006.**

            **s/ WILLIAM D. STIEHL**
            **DISTRICT JUDGE**